IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **FERNANDO CASTANEDA-QUIROZ,** | § | |
| | § | |
| Petitioner, | § | |
| | § | EP-12-CV-414-KC |
| v. | § | EP-10-CR-1564(1)-KC |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Respondent. | § | |

**ORDER**

On this day, the Court considered Petitioner Fernando Castaneda-Quiroz's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"), ECF No. 223. For the reasons set forth herein, the Motion is **DENIED**.

**I.   BACKGROUND**

On June 2, 2010, the grand jury sitting in El Paso, Texas returned a six-count Indictment charging Castaneda-Quiroz a.k.a. "Gizmo" with: conspiracy to import a controlled substance in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1), and 960(b)(3) and 18 U.S.C. § 2, conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) and 18 U.S.C. § 2, importation of a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(4) and 18 U.S.C. § 2, possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2, importation of a controlled substance in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(4) and 18 U.S.C. § 2, and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2. Indictment 1-4, ECF No. 24. Then, on November 10, 2010, the grand jury returned a Superseding Indictment that did not change the charges against Castaneda-Quiroz. Superseding Indictment 1-4, ECF No. 110.

1

On December 17, 2010, after a trial before this Court, the jury found Castaneda-Quiroz guilty on all six counts. *See* Verdict Form, ECF No. 154. The Presentence Investigation Report ("PSR"), prepared by the United States Probation Service on March 16, 2011, placed Castaneda-Quiroz at a total offense level of thirty-eight and criminal history category of II. PSR ¶¶ 38, 74, ECF No. 171. Then, on March 22, 2011, this Court sentenced Castaneda-Quiroz to two-hundred months of incarceration for the first two counts and sixty months of incarceration for the remaining four counts, to be served concurrently, followed by a term of non-reporting supervised release of three years. Sentencing 2, ECF No. 174. This Court also imposed a $2000 fine and $100 special assessment. *Id*.

On October 16, 2012 Castaneda-Quiroz filed the instant Motion, to which the government responded on February 21, 2013. Government's Resp. to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Response") 23, ECF No. 228.

## II.   DISCUSSION

### A.   28 U.S.C. § 2255

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255,

the petitioner must establish: "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

B.   **Castaneda-Quiroz's § 2255 Petition**

Castaneda-Quiroz moves the Court to vacate his sentence pursuant to 28 U.S.C § 2255. *See generally* Mot. In his Memorandum in Support of Motion Filed Under § 2255 of Petitioner ("Memorandum"), Castaneda-Quiroz raises a number of arguments as to why the Court should

vacate his sentence. Mem. 1-16.[1] Castaneda-Quiroz's Memorandum frames these arguments in the context of ineffective assistance of counsel. *See id*.

Mindful of Castaneda-Quiroz's pro se status, the Court has liberally read his petition. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a pro se pleading to encompass any allegation which may raise a claim for federal relief).

Castaneda-Quiroz makes four distinct arguments as to why his attorneys have failed to provide effective assistance of counsel. First, Castaneda-Quiroz claims that his trial attorney rendered ineffective assistance of counsel when he failed to move for a new trial. Mem. 10. Second, Castaneda-Quiroz states that his trial attorney was ineffective in failing to convey a favorable plea offer. *Id*. at 11. Third, Castaneda-Quiroz indicates that both his trial and appellate attorneys were ineffective when they failed to object at trial and on appeal respectively to double counting of drug quantities in the PSR; and, also, that his appellate attorney was ineffective for failing to challenge 39.89 kilograms of marijuana that were attributed to him in the PSR. *Id*. at 13-16. Fourth, and finally, Castaneda-Quiroz maintains that his appellate attorney was ineffective for failing to raise the denial of a severance motion in his appeal. Mot. 4. The Court addresses each of these arguments in turn.

C. **Ineffective Assistance of Counsel**

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v.*

---

[1] The Memorandum is included in the Motion and begins on page eighteen of the Motion. For clarity, references to the Memorandum use its internal pagination.

*Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To merit relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

      The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

5

'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 1. Trial counsel's failure to move for new trial

Castaneda-Quiroz argues that trial counsel was ineffective for failing to seek a new trial. Mem. 10. The argument centers on the trial testimony of Immigration and Customs Enforcement special agent Armando Coello ("Agent Coello"). *See generally* Trial Tr., Dec. 16, 2010, ECF No. 207. During direct examination, Coello testified that Castaneda-Quiroz's codefendant, Carlos Hernandez-Ortiz, had stated to him that a third individual involved in a drug conspiracy would "would take the Jeep Cherokee and with that Jeep Cherokee he would haul the Cadillac that belonged to Gizmo to Ohio." *Id*. at 120:13-15. Castaneda-Quiroz argues that this statement directly implicated him in the conspiracy, therefore, should not have been permitted at trial pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). *See* Mem. 10. Moreover, Castaneda-Quiroz argues that this statement was prejudicial because it was credible and "may have reasonably have pushed those jurors who were on the fence of reasonable doubt over to the side

of guilt" as to Castaneda-Quiroz's role in the conspiracy. *Id*. Accordingly, Castaneda-Quiroz argues that his attorney should have sought a new trial based on this error. *Id*. The government responds to this argument by noting that there was no prejudice from this testimony, and that in any event the deadline for filing a motion for a new trial has passed. *See* Resp. 10-11.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Bruton*, the Supreme Court held that the Confrontation Clause prohibits admission of a non-testifying co-defendant's extra-judicial statement at a joint trial when the statement incriminates a defendant. *See* 391 U.S. at 135-37. Such confessions are "inevitably suspect" due to the confessor's "recognized motivation to shift blame onto others." *Id.* at 135-36. The *Bruton* doctrine, however, is not applicable to all incriminating co-defendant statements. Instead, *Bruton* applies only to statements that are incriminating "on [their] face." *Richardson v. Marsh*, 481 U.S. 200, 208 (1987). Thus, "for a *Bruton* violation to occur, the codefendant's statement must directly implicate the defendant. Where the reference to the defendant is indirect and the jury can only complete the inference by relying on other evidence in the trial, *Bruton* will not apply." *United States v. Walker*, 148 F.3d 518, 522 (5th Cir. 1998), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001) (citing *United States v. Wilson*, 116 F.3d 1066, 1083 (5th Cir. 1997)).

Further, "[i]t is well established that *Bruton* error is subject to harmless error analysis, and "may be considered harmless when, disregarding the codefendant's confession, there is otherwise ample evidence against a defendant." *United States v. Powell*, 11-512-5, ---F.3d----, 2013 WL 5493969, at *13 (5th Cir. Oct. 3, 2013) (quoting *United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999)); *see United States v. Lage*, 183 F.3d 374, 388 (5th Cir. 1999).

Indeed, *Bruton* error is subject to harmless error review, under which federal habeas relief may not be granted for constitutional error that did not "have a substantial and injurious effect or influence in determining the jury's verdict." *Arroyo v. Quarterman*, 222 F. App'x 425, 426 (5th Cir. 2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).  *Bruton* error has been found to be harmless "when erroneously admitted statements are 'merely cumulative of other overwhelming and largely uncontroverted evidence.'"  *Id.*  (citing *Brown v. United States*, 411 U.S. 223, 231-32 (1973)).

   Here, Castaneda-Quiroz's attorney was not ineffective because there was no *Bruton* error.  First, the co-defendant statement in issue does not directly implicate Gizmo and is not incriminating on its face. The statement only mentions that Gizmo's car was hauled by individuals involved in the conspiracy to Ohio; the statement does not mention any activity on Castaneda-Quiroz's part, legal or illegal.  Because this statement is not incriminating on its face, and because it is only through the introduction of other evidence that the car, and Castaneda-Quiroz, can be connected to the conspiracy, there is no *Bruton* error.  *See Marsh,* 481 U.S. at 208; *Walker*, 148 F.3d at 522.  With no *Bruton* error, there can be no ineffective assistance claim on the premise that his attorney failed to challenge the Court's actions because the attorney's actions were in no way deficient.  *See Strickland*, 466 U.S. at 688-89

   Furthermore, codefendant Hernandez-Ortiz's statement to Agent Coello, regarding "Gizmo's" Cadillac and its use in the conspiracy is cumulative of other more serious, overwhelming, and uncontroverted evidence; as such, any *Bruton* error was harmless.  *See Brown*, 411 U.S. at 231-32.  First, there was ample testimony regarding Castaneda-Quiroz's ownership and use of the Cadillac.  *See* Trial Tr., Dec. 15, 2010, 46:19-20, ECF No. 206 (testimony of co-conspirator Leticia Saenz-Ortiz); *id.* at 145:7-18, 149:4-17 (testimony of co-

conspirator Jose Ramos); Trial Tr., Dec. 16, 2010, 46:19-24 (testimony of co-conspirator Rodrigo Flores). Second, the record is replete with witness testimony linking Castaneda-Quiroz to the conspiracy. *See* Trial Tr., Dec. 15, 2010, 39:17-25 (testimony of co-conspirator Leticia Saenz-Ortiz stating that Castaneda-Quiroz would provide passports to further the importation of drugs); Trial Tr., Dec. 16, 2010, 37:24-38:3 (testimony of co-conspirator Rodrigo Flores stating that Castaneda-Quiroz would pay him to import drugs); Trial Tr., Dec. 15, 2010, 114:19-21 (testimony of co-conspirator Jose Ramos characterizing Castaneda-Quiroz as the "main guy" in drug conspiracy); Trial Tr., Dec. 15, 2010, 163:23-164:3 (testimony of co-conspirator Yesenia Rubio that Castaneda-Quiroz drove her to Mexico so that she could import drugs back to the United States). Because of this overwhelming evidence, the introduction of codefendant Hernandez-Ortiz's statement regarding the transport of Castaneda-Quiroz's Cadillac to Ohio was cumulative; therefore, any *Bruton* error was harmless. *See Brown*, 411 U.S. at 231-32.

Finally, the Court notes that Castaneda-Quiroz's ineffective assistance allegations also fall flat because his attorney proactively raised concerns about *Bruton* both before and during trial. The attorney filed a pre-trial motion to sever the trial based upon *Bruton* concerns, ECF No. 88, and also objected to this co-defendant statement at trial with a specific reference to this *Bruton*-related motion. Trial Tr., Dec. 16, 2010, 120:13-15.

Accordingly, counsel was not ineffective for failing to move for a new trial because the failure to raise a meritless claim, such as this, cannot amount to ineffective assistance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."); *United States v. Coleman*, 3-97-CR-056-R, 2002 WL 1758179, at *4 (N.D. Tex. July 26, 2002). And, because a motion for a new trial would have been frivolous, Castaneda-Quiroz was not prejudiced by counsel's failure to file such a

motion.  *See Strickland*, 466 U.S. at 687; *United States v. Young*, 12-CV-3788, 2013 WL 2392902, at *9 (E.D. Pa. May 31, 2013) ("No such reasonable probability of a different outcome exists here.  The Rule 33 motion which the Petitioner ultimately did file made exclusively meritless arguments which he subsequently asserted again in this *habeas corpus* petition and which we have already rejected above.")  *Baker v. United States*, 3:07-CR-435, 2011 WL 3841690, at *12 (E.D. Va. Aug. 30, 2011) ("Moreover, Petitioner has not shown the outcome of his proceedings would have been different had counsel filed a Rule 33 motion based on the arguments Petitioner now presents for the Court's consideration.").

### 2. Appellate counsel's failure to raise a denial of severance in his appeal

Relatedly, Castaneda-Quiroz argues that his appellate counsel was ineffective for not raising this Court's denial of his motion to sever the trial on appeal.  Mem. 5.  The *Strickland* standard also applies to ineffective assistance of counsel claims on direct appeal.  *United States v. Bishop*, 629 F.3d 462, 469 (5th Cir. 2010) (citing *Strickland*, 466 U.S. at 697)).  Thus, the defendant must show that his appellate counsel's "performance fell below an objective standard of reasonableness" and that "but for counsel's deficient performance, the result of the proceeding would have been different."  *Id.* (citing *Strickland*, 466 U.S. at 687-96).

As explained above, any *Bruton*-type error was harmless due to the large amount of inculpatory evidence introduced against Castaneda-Quiroz at trial.  *See Powell*, 11-512-5, 2013 WL 5493969.  Thus, any attempt by appellate counsel to raise the issue on appeal would have been meritless; and, failure to raise a meritless claim cannot constitute ineffective assistance.  *See Clark*, 19 F.3d at 966. The ineffective assistance of appellate counsel claim fails.

### 3. Trial counsel's failure to convey a favorable plea and appellate counsel's failure to raise this issue in his appeal

Next, Castaneda-Quiroz states that "trial counsel was ineffective in failing to convey a favorable plea-offer by the Government." Mem. 11. Castaneda-Quiroz cites to the recent United States Supreme Court cases of *Lafler v. Cooper*, ---U.S.----, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, ---U.S.----, 132 S.Ct. 1399 (2012), in support.

In *Lafler*, the Supreme Court confirmed that "the *Strickland* test applies to ineffective assistance of counsel claims when counsel's ineffective advice causes a defendant to reject a favorable plea offer, and the defendant is subjected to a less favorable outcome in further trial proceedings." *United States v. Gonzalez*, 493 F. App'x 541, 544 (5th Cir. 2012) (citing *Lafler,* 132 S.Ct. at 1383). In *Frye*, the Supreme Court explained that "the *Strickland* test applies to ineffective assistance of counsel claims arising from counsel's failure to communicate a plea offer before it expires." *Id.* (citing *Frye,* 132 S.Ct. at 1408–10).

In this case, had Castaneda-Quiroz's counsel failed to convey a plea offer, as Castaneda-Quiroz alleges, then he might have demonstrated ineffective assistance of counsel. However, Castaneda-Quiroz's claim is untrue and flies in the face of the record.

At the Court's December 1, 2010, status conference, at which Castaneda-Quiroz was present, the government stated on the record that it had offered a plea agreement to Castaneda-Quiroz, and set out the terms of the agreement on the record in the presence of Castaneda-Quiroz. Dec. 1, 2010 Status Conf. Tr. 2-3, ECF 231. Defense counsel confirmed the existence of the written offer and confirmed that counsel had communicated that offer to Castaneda-Quiroz "sometime [sic] ago." *Id.* at 3. Thus, the record reflects that the terms of the plea deal were set out in open court before Castaneda-Quiroz, that the terms had previously been conveyed to him, and that he previously rejected the agreement. *See id.* at 2-3   The record confirms that

11

Castaneda-Quiroz was apprised of the plea offer; and he made no attempt to communicate at the status conference that the truth was otherwise.

Accordingly, because the record conclusively shows that these allegations about the communication of the plea offer are untrue, the Court finds that this claim, both as to trial counsel and appellate counsel, must be dismissed. *See United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citing *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)).

### 3. Trial counsel's failure to object to parts of the PSR and appellate counsel's failure to raise these issues on appeal

Next, Castaneda-Quiroz argues that he received ineffective assistance of counsel when his attorney did not object to certain parts of the Presentence Investigation Report ("PSR") at sentencing. Specifically, he claims that 178.26 kilograms of marijuana used in the calculation of his base offense level were improperly counted twice, once for the importation count and once for the possession with intent to distribute count. Mem. 9. Castaneda-Quiroz also argues that his appellate attorney was ineffective for failing to raise this issue on appeal. *Id.* And, finally, Castaneda-Quiroz argues that although trial counsel properly objected to the PSR's finding in ¶ 44 of the PSR that 39.89 kilograms of marijuana were attributable to Castaneda-Quiroz, his appellate attorney was ineffective for failing to raise this issue on appeal. Mem. 11-13. The Court addresses each argument in turn.

#### a. Double counting

As for the first claim of "double counting," there is no indication in the PSR and Castaneda-Quiroz fails to show even the possibility that any amount of marijuana was improperly counted among the various Counts of which he was convicted. Castaneda-Quiroz correctly cites to relevant law in his Motion stating:

> U.S.S.G. §3D1.l of the Sentencing Guidelines provides that when a defendant has been convicted of more than one count, the court shall group related counts and determine a combined offense level. Counts are related when they involve "substantially the same harm." U.S.S.G. §3D1.2. Counts involve substantially the same harm when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. §3Dl.2(d).

Mem. 15.

However, though he cites to correct law, Castaneda-Quiroz fails to demonstrate any error in the calculation of the PSR, or on the part of his attorney. The PSR itself follows the law Castaneda-Quiroz cites. The six counts of which Castaneda-Quiroz was convicted were properly grouped together in the PSR, and the base offense level was determined on the basis of the total quantity of the marijuana involved in the grouped conspiracy, importation, and possession counts as is required by U.S.S.G. § 3D1.3. PSR ¶ 50-51. Castaneda-Quiroz has provided no support for his contention that amounts were double counted. Therefore, he has failed to meet his burden. *See Strickland*, 466 U.S. at 687, 689.

Indeed, the PSR sets out an evidentiary basis for all of the marijuana for which Castaneda-Quiroz was held accountable. The PSR attributes to Castaneda-Quiroz 32.85 kilograms seized from Yesenia Rubio at the time of her arrest on December 4, 2009, along with 164.25 kilograms which she had transported for Castaneda-Quiroz in previous loads. PSR ¶¶ 28, 44. The PSR further attributes to Castaneda-Quiroz 39.89 kilograms of marijuana transported by Analillia Sealy ("Sealy"), as well as twenty-two kilograms seized from Rodrigo Flores on January 9, 2010. PSR ¶¶ 27-28, 44. Finally, the PSR attributes to Castaneda-Quiroz 178.26 kilograms of marijuana that Hernandez-Ortiz and Jose Luis Ramos transported to Tulsa, Oklahoma in a 2002 Envoy, and which Hernandez-Ortiz had driven into the United States from

Mexico immediately prior to the Tulsa trip. PSR ¶¶ 41, 44. This marijuana totals 437.25 kilograms. PSR ¶ 51.

As explained above, to prevail on the ineffective assistance claim, Castaneda-Quiroz must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Castaneda-Quiroz has given no indication how the 178.26 kilograms of marijuana was improperly grouped. These various loads of marijuana, occurring at different times and involving different individuals are not comprised of the same marijuana, such that a double counting could occur. Because he has failed to show that there was any error in the calculation of the base offense level in the PSR, he has not shown that his counsel was ineffective for failing to object to it. With no error, the claim is meritless, and meritless claims such as this, cannot constitute ineffective assistance. *See Clark*, 19 F.3d 959 at 966; *Coleman*, 2002 WL 1758179, at *4.

And, considering there was no attorney error at the time of sentencing, there was certainly no ineffective assistance of counsel for failing to raise this issue on appeal. *See Bishop*, 629 F.3d 462 at 469 (citing *Strickland*, 466 U.S. at 697)) (finding that the *Strickland* standard also applies to ineffective assistance of counsel claims on direct appeal). Castaneda-Quiroz cannot show that his appellate counsel's "performance fell below an objective standard of

reasonableness" and that "but for counsel's deficient performance, the result of the proceeding would have been different." *See id.* (citing *Strickland*, 466 U.S. at 687-96).

### b. Failure to challenge Sealy load on appeal

Next, Castaneda-Quiroz argues that appellate counsel was ineffective for failing to re-raise an objection on appeal that had been raised by counsel at sentencing. Mem. 12. Specifically, Castaneda-Quiroz argues that there was a complete lack of evidence connecting him to a load of drugs which had been transported by Sealy in the amount of 39.89 kilograms, as explained in paragraph 44 of the PSR. *Id.*; PSR ¶ 44. Castaneda-Quiroz notes that trial counsel raised this issue, but complains of the failure of appellate counsel to do the same. Mem. 12-13.

As explained by trial counsel at sentencing:

> What I did object to were the drug quantities involving Ms. Sealy. . . . And she claimed, initially, that Mr. Castaneda was involved in two loads. One of which was a December 21, 2009 load. He was indicted for that offense. The Government then withdrew that indictment. She was available to testify. She did testify. And I believe that the drug quantity attributable to him – and I'm not objecting to this Oklahoma load that Mr. Ramos talked about. I'm not objecting to the loads that Ms. Rubio objected to, the historical ones. I'm objecting to him being held accountable to for a load of marijuana that was not testified to. And I think that testimony could have been presented. It wasn't presented. And for him to now be held accountable for one of those two loads -- the -- the Government has abandoned the other, I think is an unfair finding.

March 22, 2011, Sentencing Tr. 7:9-23.

Addressing this issue to the satisfaction of the Court, the government explained:

> As to the first objection regarding the load by Analilia Sealy, the government did agree that the December 21, 2009 load after, um, debriefing with Defendant Sealy, the Defendant and Carlos Hernandez-Ortiz were not involved with that load. However, they were involved with the first load that Sealy did, which was prior to December 21st. And although Sealy did not testify at trial, Jose Luis Ramos and Maria Leticia Saenz-Ortiz testified about the involvement of Sealy on the first load. And that was the Gizmo organization load. So the Government believes that the drug calculations are correct as they stand regarding that.

*Id.* at 11:4-14.

15

The Court overruled defense counsel's objection finding that there was sufficient testimony at trial to attribute a 39.89 kilogram Sealy load to Castaneda-Quiroz that had occurred prior to December 21, 2009.  *See* Sentencing Tr. 13-14.  This was so because of the evidence connecting Castaneda-Quiroz to prior loads of drugs which Sealy had transported into the United States as part of Castaneda-Quiroz's operation.  This finding is supported by the testimony of witnesses Saenz-Ortiz and Ramos.  *See* December 15, 2010, Trial Tr., Vol II at 45-46, 130-39, 161-62.  Castaneda-Quiroz has not shown that his appellate counsel's "performance fell below an objective standard of reasonableness" and that "but for counsel's deficient performance, the result of the proceeding would have been different[;]" therefore, the claim fails.  *See Bishop*, 629 F.3d 462, 469 (5th Cir. 2010).  Therefore, he has not demonstrated that his counsel was ineffective.

### III.    EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the petitioner is not entitled to relief.  *See* 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the petitioner's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself); *United States v. Drummond*, 910 F.2d 284,285 (5th Cir. 1990) ("[W]e now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").  The record in this case is adequate to dispose fully and fairly of Castaneda-Quiroz's claims.  The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted). In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted. *See* 28 U.S.C. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); *see also Lackey*, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 & n.1 (5th Cir. 1998) (explaining that the Fifth Circuit may address an issue not certified by the district court if the petitioner makes (1) an explicit request and (2) a substantial showing of the denial of a constitutional right). A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Castaneda-Quiroz's Motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny Castaneda-Quiroz a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, Petitioner Castaneda-Quiroz's Motion, ECF No. 223, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Castaneda-Quiroz's civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** Petitioner Castaneda-Quiroz is also **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**SO ORDERED.**

SIGNED this 18t day of October, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE